NO. 4-09-0822    Opinion Filed 3/4/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| FREDERICK T. CHILDS, | ) | No. 08CF426 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles G. Reynard, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice McCullough concurred in the judgment and opinion.

**OPINION**

In May 2009, the trial court found defendant, Frederick T. Childs, guilty of attempt (aggravated criminal sexual assault) (720 ILCS 5/8-4(a), 12-14(a)(2) (West 2008)) and later sentenced him to 12 years in prison.

Defendant appeals, arguing that (1) the State's charging instrument was defective; (2) the trial court erred by finding that the State was required only to prove beyond a reasonable doubt that he intended to commit the offense of criminal sexual assault to convict him of attempt (aggravated criminal sexual assault); and (3) the McLean County circuit clerk lacked the authority to impose a (a) $10 drug-court fee and (b) $15 children's-advocacy-center fee under sections 5-1101(d-5) and 5-1101(f-5), respectively, of the Counties Code (55 ILCS 5/5-1101(d-5), (f-5) (West 2008)).

Because we accept the State's concession that the circuit clerk erred by imposing certain fees, we affirm defendant's conviction and sentence as modified and remand for issuance of an amended sentencing judgment.

## I. BACKGROUND

### A. The Indictment

In April 2008, a grand jury indicted defendant, alleging that he committed the following offense:

> "Attempted Aggravated Criminal Sexual
> Assault[.]
>
> In that the defendant knowingly and with
> the intent to commit criminal sexual assault
> by the use of force took a substantial step
> toward the commission of that offense by
> hitting the victim, C.B., about the body,
> thereby causing bruising to C.B., and by
> ordering C.B. to remove her pants, and by
> removing his penis from his pants."

### B. The Stipulated Evidence Presented to the Trial Court

At an April 2009 stipulated bench trial, the parties agreed to the admission of (1) written statements by (a) the victim, C.B., who was 17 years old at the time of the incident, and (b) a Bloomington police officer; (2) a police crime lab report; and (3) several photographs, which showed the following.

On April 4, 2008, C.B. decided to leave a party and drive home. When C.B. informed her friends that she was leaving,

- 2 -

defendant asked C.B. if she would give him a ride to his apartment. C.B. reluctantly agreed, noting that despite being at defendant's apartment with her friends on three previous occasions, she only knew defendant by his nickname.

As C.B. drove, defendant repeatedly reached over and rubbed C.B.'s thigh with his hand. Each time defendant touched C.B., she pushed him away and told him to stop. When C.B. arrived at defendant's apartment building, defendant suddenly grabbed C.B.'s steering wheel and told C.B. that she was (1) "not going anywhere" and (2) "was going to have sex with him that night." C.B. cried and shouted that she was not going to have sex with defendant and that she needed to go home. Defendant responded, "You're not going anywhere, bitch," adding, "You're gonna stay here and I'm gonna fuck you, bitch." Defendant then shifted C.B.'s car into park and removed the ignition key.

Defendant unzipped his trousers, exposed his penis, and told C.B., "You're gonna suck my dick, bitch." and "I'm gonna get some head from you." C.B. refused, again yelling that she had to go home. Defendant then (1) pulled his trousers up, (2) exited the car, (3) dangled C.B.'s keys in front of her, and (4) taunted C.B. by saying, "Now where you gonna go bitch?" When C.B. attempted to make a call on her cellular phone, defendant returned to C.B.'s car to stop her.

During the ensuing struggle, defendant wrestled the phone from C.B. by repeatedly punching her in the face and body with such force that it dislodged C.B.'s nose and ear piercings.

- 3 -

With each punch, defendant yelled that C.B. "was going to have sex with him." C.B. estimated that defendant continued hitting her for at least four minutes until she relented because she was in "significant pain" and believed that she had no other choice. C.B. told defendant that she would comply with his demands provided he stopped beating her and remained calm.

After defendant told C.B. that she "better do what the fuck I say bitch," defendant gave C.B. back her keys and told her to drive to an area near the rear entrance of his apartment building. After C.B. complied, defendant again removed the car's ignition key and ordered C.B. into the backseat. C.B. begged defendant to use a condom that she had supplied, but defendant responded that he did not need a condom because he intended to sodomize her. Defendant later agreed to use a condom based on C.B.'s persistent cries that he do so. As defendant applied the condom, he told C.B. to remove her pants. C.B. told defendant that he could not have sex with her because she was menstruating but eventually complied with defendant's order (1) to remove her tampon, which she threw out the window, and (2) position herself on her hands and knees.

Although defendant then attempted to penetrate C.B.'s vagina and anus, he succeeded only in pushing his flaccid penis into C.B.'s buttocks and against the back of her thigh. He did so with such force that he caused C.B. to repeatedly hit her head against the car window. About 30 seconds later, defendant stopped and ordered C.B. to put her clothes back on. Defendant

- 4 -

told C.B. that (1) he had never done that before; (2) he "wanted" her, but he knew C.B. was not "going to give it to [him]" so he "had to take it"; and (3) she could not tell anyone about this incident. Defendant then pulled up his trousers, threw the condom out of the car window, and ran into his apartment. C.B. then drove home and described defendant's actions to her parents.

The following day, police collected a tampon and a condom near defendant's apartment. Testing later confirmed that the deoxyribonucleic acid (DNA) on those items matched C.B.'s and defendant's respective DNA profiles. Three admitted photographs depicted (1) two separate bruises located on C.B.'s left cheek and under her chin; (2) three separate bruises located on C.B.'s right cheek, right ear, and forehead; and (3) a circular bruise on C.B.'s thigh. After accepting the parties' stipulation, the trial court continued the trial until the next month.

C. The Parties' Respective Arguments to the Trial Court

When defendant's stipulated bench trial resumed in May 2009, the parties informed the trial court that their pending arguments did not concern the stipulated evidence previously presented but instead, how the law applied to that evidence.

The State argued that the evidence established defendant committed the offense of attempt (aggravated criminal sexual assault) as alleged in its indictment. In particular, that defendant intended to commit a criminal sexual assault that was aggravated by bodily harm, which the State identified as the bruising defendant had inflicted upon C.B. during his attempt to

- 5 -

sexually assault her. With regard to that bodily harm, the State asserted that it was not required to prove that defendant intended to inflict bodily harm, but instead, that the bodily harm was a natural and reasonably foreseeable consequence of the force defendant used in attempting to commit a criminal sexual assault on C.B.

In response, defense counsel argued that at the time of the offense, the evidence established that defendant committed the offense of attempt (criminal sexual assault) in that defendant intended only to sexually penetrate C.B. by the use of force. In particular, defense counsel, noting that the elements of the aggravated-criminal-sexual-assault statute require the (1) completion of the criminal sexual assault and (2) an accompanying aggravating factor, contended that the State improperly "elevated" defendant's act of attempt (criminal sexual assault) to attempt (aggravated criminal sexual assault) by "retrospectively" using C.B.'s bruises that later appeared, even though he had not committed an act of sexual penetration. Defense counsel summarized his argument as follows:

> "It's my argument, your honor, that at the time the force was used, it was just that. It was use of force as described in the statute defining criminal sexual assault and therefore[,] since we're talking about an uncompleted sex act, we are talking about an attempted criminal sexual assault."

D. The Trial Court's Findings and Sentence

Following arguments, the trial court made the following findings:

"It is [the court's] belief and [its] finding that the intent required by the attempt statute is the intent to commit the core, or predicate, offense of criminal sexual assault. The intent to perpetrate bodily harm, the bruises in this case, as an aggravating factor is not a required, specific intent. ***

The intent to perpetrate, or to inflict the bruises, the bodily harm, in any event [the court] think[s] is fairly established beyond a reasonable doubt by *** the nature of *** defendant's assaultive conduct and his own statements. [The court] appreciate[s] that the premeditative dimension of the specific intent might well be that [defendant] wanted to--his intention, his premeditation was to secure sexual relations, and that he has not specifically contemplated the infliction of harm to do so, but his premeditation [the court believes], based on [defendant's] conduct and his statements, fairly established his contemplation that [the infliction

- 7 -

of harm] was a possible recourse to which he would resort, and which he, indeed, resorted to.  ***

*** Defendant's statements belie the inferences that there was no intent, because he made statements indicating that he was going to secure what he wanted that night by force and by the infliction of injuries, which were the natural[]and[]probable consequences of the infliction of the force that [defendant] inflicted.  [The court finds] that the retrospective analysis that [defense counsel] reflects upon simply is not foreclosed in these circumstances by virtue of the fact that this is an attempt offense."

Thereafter, the court found defendant guilty of attempt (aggravated criminal sexual assault).

### E. The Trial Court's Sentencing Order and the Circuit Clerk's Notice to Party

Following a July 9, 2009, sentencing hearing, the trial court filed a sentencing order that imposed a 12-year prison sentence with 123 days of sentencing credit for time defendant spent in pretrial confinement.  That same day, the court also filed a supplemental sentencing order, imposing the following financial obligations against defendant: (1) a $20 penalty under section 10(c)(2) of the Violent Crime Victims Assistance Act (Act) (725 ILCS 240/10(c)(2) (West 2008)), (2) a $200 DNA-analy-

- 8 -

sis fee under section 5-4-3(j) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4-3(j) (West 2008)), and (3) a $200 sexual-assault fine under section 5-9-1.7(b)(1) of the Unified Code (730 ILCS 5/5-9-1.7(b)(1) (West 2008)).

On July 10, 2009, the circuit clerk filed a notice to party, notifying defendant of the fines and court costs that had been assessed against him. The circuit clerk's notice, which was not signed by the trial court, included, in pertinent part, a (1) $10 drug-court fee and (2) $15 children's-advocacy-center fee pursuant to sections 5-1101(d-5) and 5-1101(f-5), respectively, of the Counties Code.

On July 14, 2009, the trial court filed an amended supplemental sentencing order again imposing only (1) a $20 Act penalty, (2) a $200 DNA-analysis fee, and (3) a $200 sexual-assault fine. On July 15, 2009, the circuit clerk filed another notice to party, which was not signed by the trial court, imposing, in pertinent part, (1) a $10 drug-court fee and (2) a $15 children's-advocacy-center fee against defendant.

This appeal followed.

## II. ANALYSIS

Defendant argues that (1) the State's charging instrument was defective; (2) the trial court erred by finding that the State was required only to prove he intended to commit criminal sexual assault to convict him of attempt (aggravated criminal sexual assault); and (3) the circuit clerk lacked the authority to impose a (a) $10 drug-court fee and (b) $15 children's-

advocacy-center fee under sections 5-1101(d-5) and 5-1101(f-5), respectively, of the Counties Code.  We address defendant's contentions in turn.

## A. Defendant's Claim Regarding the State's Charging Instrument

Defendant argues that the State's charging instrument was defective.  Specifically, defendant contends that the State's indictment failed to allege that he had the requisite intent to commit aggravated criminal sexual assault and as consequence, failed to apprise him of the offense with sufficient specificity to prepare his defense.  We disagree.

The timing of a challenge to the charging instrument is significant in determining whether a defendant is entitled to relief.  *People v. Davis*, 217 Ill. 2d 472, 478, 841 N.E.2d 884, 888 (2005).  When a defendant challenges the sufficiency of the charging instrument for the first time on appeal, "'a reviewing court need only determine whether the charging instrument apprised the defendant of the precise offense charged with enough specificity to prepare his or her defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.'"  *People v. Burke*, 362 Ill. App. 3d 99, 103, 840 N.E.2d 281, 284 (2005) (quoting *People v. Maggette*, 195 Ill. 2d 336, 347-48, 747 N.E.2d 339, 346 (2001)).  In other words, the question on appeal is whether the defect in the charging instrument prejudiced the defendant in preparing his defense.  *Davis*, 217 Ill. 2d at 479, 841 N.E.2d at 888.  In making this determination, a reviewing court may refer to the

record.  *Maggette*, 195 Ill. 2d at 348, 747 N.E.2d at 346.

In support of his contention that the State's indictment prejudiced him, defendant asserts that because the State's indictment charged, in part, that he "knowingly and with the intent to commit criminal sexual assault by the use of force" instead of charging him with "knowingly and with the intent to commit *aggravated* criminal sexual assault by the use of force," the indictment failed to apprise him of the precise offense charged with sufficient specificity to prepare his defense. However, defendant fails to specify how the omission of the word "aggravated" adversely affected his defense by articulating the actions his counsel would have otherwise taken if the State's indictment had included that word.  See *Davis*, 217 Ill. 2d at 479, 841 N.E.2d at 888 (to prevail on a challenge to the charging instrument for the first time on appeal, a defendant must show prejudice in the preparation of his defense).  Moreover, the record belies defendant's claim that his counsel was under the misapprehension that the State "had only charged, and could only prove that [defendant] had the intent to commit the included offense of criminal sexual assault."

In this case, the record shows that at the start of defendant's April 2009 stipulated bench trial, defense counsel agreed with the State that the sole issue before the trial court concerned whether the stipulated evidence presented proved defendant guilty of attempt (aggravated criminal sexual assault), as the State had alleged in its indictment, or attempt (criminal

sexual assault), as defense counsel advocated.  In this regard, the record also shows that defendant's counsel was not only aware of the State's position with regard to the offense charged in the indictment, but also prepared in that he argued zealously in opposition to that position.  Accordingly, we reject defendant's argument that the State's indictment failed to apprise him of the offense with sufficient specificity to prepare his defense.  Further, defendant's conviction constitutes a bar to a future prosecution arising out of the same conduct, and defendant does not even argue otherwise.

B. Defendant's Claim That the Trial Court Erred

Defendant next argues that the trial court erred by finding that the State was required to prove beyond a reasonable doubt only that he intended to commit the offense of criminal sexual assault to convict him of attempted aggravated criminal sexual assault.  We disagree.

1. *The Offense of Attempt*

Section 8-4(a) of the Criminal Code of 1961 (Criminal Code), provides as follows:

"(a) Elements of the Offense.

A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."  720 ILCS 5/8-4(a) (West 2008).

2. *The Offense of Aggravated Criminal Sexual Assault*

Section 12-14(a)(2) of the Criminal Code provides as follows:

"(a) The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during *** the commission of the offense:

***

(2) the accused caused bodily harm[.]"  720 ILCS 5/12-14(a)(2) (West 2008).

(A person commits the offense of criminal sexual assault if he "commits an act of sexual penetration by the use of force or threat of force."  720 ILCS 5/12-13(a)(1) (West 2008).  "'Sexual penetration' means any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth[,] or anus of another person, or any intrusion, however slight, of any part of the body of one person or *** object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio[,] or anal penetration."  720 ILCS 5/12-12 (f) (West 2008)).

### 3. *The Trial Court's Findings*

In support of his argument that the trial court erred, defendant contends that the offense of attempt (aggravated criminal sexual assault) required the State to prove that he intended to commit the offense of aggravated criminal sexual

assault instead of merely proving that he intended to commit criminal sexual assault. Defendant's contention is misguided.

As previously outlined, the elements of attempt are (1) an intent to commit the specific offense and (2) an overt act constituting a substantial step toward the commission of that offense. *People v. Rincon*, 387 Ill. App. 3d 708, 723, 900 N.E.2d 1192, 1205 (2008). Again, a person commits aggravated criminal sexual assault when he commits criminal sexual assault--that is, sexual penetration by the use of force--accompanied by a statutorily enumerated aggravating factor during the commission of the criminal sexual assault. 720 ILCS 5/12-14(a) (West 2008). Because the statutory offense of aggravated criminal sexual assault does not prescribe a mental state, the mental state of intent, knowledge, or recklessness must be implied. *People v. Anderson*, 325 Ill. App. 3d 624, 633, 759 N.E.2d 83, 91 (2001).

If, during the course of a sexual assault, bodily harm is caused to the victim, it is unnecessary for the State to prove that such harm was inflicted knowingly or intentionally. *People v. Russell*, 234 Ill. App. 3d 684, 688, 600 N.E.2d 1202, 1205 (1992). "An inadvertent or accidental infliction of simple bodily harm will nonetheless subject the assailant to conviction of aggravated criminal sexual assault." *Id*.

In this case, the trial court noted that the State was required to prove defendant intended to commit the offense of aggravated criminal sexual assault. However, the court further explained that, in accordance with the aggravated-criminal-sexual

assault statute, the State was required to prove beyond a reasonable doubt that defendant intended to commit the offense of criminal sexual assault--which defendant admitted to the court he committed--and that the stipulated evidence presented proved beyond a reasonable doubt that defendant inflicted bodily harm during his attempt to sexually assault C.B.

In other words, the trial court first concluded that the State did not need to prove that defendant intended to inflict bodily harm upon C.B. to prove attempt (aggravated criminal sexual assault) as long as the State proved--as it did-- that defendant intended to commit a sexual assault upon C.B. and, in the process, inflicted bodily harm upon her.  We agree and view this result as consistent with *Russell*.

Although this analysis is sufficient to decide this issue, we further note that the trial court also concluded that if the State did need to prove that defendant intended to inflict bodily harm upon C.B. to prove attempt (aggravated criminal sexual assault), the evidence was sufficient to do so.  Again, we agree.

Here, the stipulated evidence showed that defendant punched C.B. repeatedly until she acquiesced to defendant's sexual demands.  In so doing, he inflicted bodily harm in the form of bruises on C.B.'s face and thigh.  See *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004) (a reviewing court "[w]ill not reverse a conviction unless the evidence is so unreasonable, improbable[,] or unsatisfactory that it raises a

- 15 -

reasonable doubt of defendant's guilt").

### C. Defendant's Claim Regarding the Circuit Clerk's Imposition of Certain Fees

#### 1. *The Imposition of the Drug-Court Fee and Children's-Advocacy-Center Fee*

Defendant also argues that the circuit clerk lacked the authority to impose a (1) $10 drug-court fee and (2) $15 children's-advocacy-center fee under sections 5-1101(d-5) and 5-1101(f-5), respectively, of the Counties Code.  The State concedes that the circuit clerk erred by imposing the fees and we accept the State's concession.

Sections 5-1101(d-5) and 5-1101(f-5) of the Unified Code provide as follows:

"Additional Fees to finance court system.  A
county board may enact by ordinance or reso-
lution the following fees:

* * *

(d-5) A $10 fee to be paid by the defen-
dant on a judgment of guilty *** under Sec-
tion 5-9-1 of the [Unified Code] to be placed
in the county general fund and used to fi-
nance the county mental health court, the
county drug court, or both.

* * *

(f-5) In each county in which a Chil-
dren's Advocacy Center provides services, the
county board may adopt a mandatory fee of

- 16 -

between $5 and $30 to be paid by the defen-
dant on a judgment of guilty *** under Sec-
tion 5-9-1 of the [Unified Code] for a felony
***."  55 ILCS 5/5-1101(d-5), (f-5) (West
2008).

See *People v. Williams*, No. 1-09-1667, slip op. at 11 (Ill. App.
Dec. 2, 2010), (concluding that the fees imposed under sections
5-1101(d-5) and 5-1101(f-5) are fines because they are "not
intended to specifically reimburse the State for costs it has
incurred in prosecuting a defendant"); see also *People v. Folks*,
No. 4-09-0579, slip op. at 10-11 (Ill. App. Dec. 28, 2010),
(noting that the McLean County Board enacted the drug-court fee
on September 1, 2006, and the children's-advocacy-center fee on
June 1, 2008, and concluding both assessments are mandatory
fines).

In People v. Swank, 344 Ill. App. 3d 738, 747-48, 800
N.E.2d 864, 871 (2003), this court defined the proper role of
judicial and nonjudicial members in imposing statutory fines as
follows:

"The imposition of a fine is a judicial
act.  'The clerk of the court is a nonjudi-
cial member of the court and, as such, has no
power to impose sentences or levy fines.'
[Citation.]  Instead, the circuit clerk has
authority only to collect judicially imposed
fines.  [Citation.]"

- 17 -

In this case, the record reveals that the trial court did not impose either (1) a $10 drug-court fee or (2) a $15 children's-advocacy-center fee, which later appeared on the circuit clerk's July 2009 notice to party. Thus, because we have previously held that the drug-court fee and children's-advocacy-center fee are both mandatory fines, those assessments cannot be imposed by the circuit clerk. Accordingly, we (1) vacate the fines imposed by the circuit clerk and (2) reimpose the $10 drug-court fee and $15 children's-advocacy-center fee under sections 5-1101(d-5) and 5-1101(f-5), respectively, of the Counties Code. See *Folks*, slip op. at 13, (vacating and reimposing a $10 drug-court fee and $15 children's-advocacy-center fee, concluding that this court can reimpose mandatory fines).

In addition, we note that because the record shows that defendant spent 123 days in pretrial confinement on a bailable offense, he is entitled to receive a total credit of $25 to be applied to his $10 drug-court fee and $15 children's-advocacy-center fee pursuant to section 110-14 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/110-14 (West 2008)).

### 2. *The Trial Court's Imposition of a $20 Act Assessment*

Section 10(b) of the Act mandates the imposition of an additional financial penalty when a defendant is convicted of a felony. 725 ILCS 240/10(b) (West 2008). If the trial court imposes fines on a defendant convicted of a felony, the additional Act penalty is calculated at "$4 for each $40, or fraction

thereof, of fine imposed." 725 ILCS 240/10(b) (West 2008). If no fines are imposed by the court, the additional Act penalty is $25 for crimes of violence and $20 for any other felony. 725 ILCS 240/10(c) (West 2008). In addition, any Act penalty imposed is not subject to the $5-per-day credit for incarceration on a bailable offense under section 110-14 of the Criminal Procedure Code. 725 ILCS 240/10(c) (West 2008).

Here, because this court imposed a $10 drug-court fee and $15 children's-advocacy-center fee and the trial court had previously imposed a $200 sexual-assault fine and $200 DNA-analysis fee, defendant was assessed $425 in fines. See *People v. Long*, 398 Ill. App. 3d 1028, 1034, 924 N.E.2d 511, 516 (2010) (in which this court--in a matter of first impression--concluded that the DNA-analysis fee is a fine because it does not reimburse the State for costs associated with prosecuting a defendant). Therefore, we vacate the court's imposition of a $20 penalty under section 10(c) of the Act and impose a $44 penalty under section 10(b) of the Act ($425 divided by $40 equals 10.6; 10 plus a "fraction thereof" multiplied by $4 equals $44).

### III. CONCLUSION

For the reasons stated, we (1) affirm defendant's conviction and sentence; (2) vacate the circuit clerk's imposition of fines; (3) impose a $10 drug-court fee and $15 children's-advocacy-center fee under sections 5-1101(d-5) and 5-1101(f-5), respectively, of the Counties Code, which are offset by credit for the time defendant served in pretrial custody; (4)

- 19 -

vacate the trial court's imposition of a $20 Act penalty under section 10(c) of the Act, and (5) impose a $44 Act penalty under section 10(b) of the Act. We remand for issuance of an amended sentencing judgment consistent with this opinion. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed as modified and remanded with directions.