In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-1192

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERRANCE BROWN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:20-cr-00148 — **Philip P. Simon**, *Judge*.

_____

ARGUED APRIL 25, 2023 — DECIDED JULY 21, 2023

_____

Before RIPPLE, ST. EVE, and PRYOR, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Terrance Brown was convicted of
bank robbery in violation of 18 U.S.C. § 2113(a). At sentenc-
ing, the district court determined, over Mr. Brown's objection,
that he was a career offender under U.S.S.G. §§ 4B1.1 and
4B1.2 and that the Sentencing Guidelines yielded an advisory
range of 210 to 240 months' imprisonment. The court imposed
a sentence of 180 months' imprisonment. Mr. Brown appeals
his sentence, arguing that the district court erred in

considering him to be a career offender. We affirm the judgment of the district court.

## I

This case centers on the Sentencing Guidelines' definition of a "crime of violence" for purposes of the career-offender sentencing enhancement. Under § 4B1.1(a) of the Guidelines, certain defendants are deemed career offenders if they have at least two prior felony convictions of a crime of violence. The so-called "elements clause" of § 4B1.2(a)(1) defines a crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that … has as an element the use, attempted use, or threatened use of physical force against the person of another."[1]

The district court found that Mr. Brown had two prior convictions of crimes of violence, rendering him a career offender under the Guidelines. Relevant here is his 2010 Illinois conviction for aggravated vehicular hijacking. At the time of Mr. Brown's conviction, a person could be convicted of vehicular hijacking if he "t[ook] a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-3 (2010).[2] The carrying of a dangerous weapon in the

---

[1] In addition to the elements clause, § 4B1.2(a)(2) also contains an "enumerated clause," which provides that "murder, voluntary manslaughter, kidnapping," and other enumerated offenses are crimes of violence. Only the elements clause is at issue in this appeal.

[2] Section 18-3 was amended, effective 2013, to include an express *mens rea* requirement: "A person commits vehicular hijacking when he or she *knowingly* takes a motor vehicle from the person or the immediate presence of ( … continued)

commission of the offense constitutes aggravated vehicular hijacking. *Id.* 5/18-4(a)(3)–(4).

Although we previously had held that Illinois vehicular hijacking constituted a crime of violence for purposes of § 4B1.2(a)(1), *see United States v. Norris*, 835 F. App'x 892, 893–94 (7th Cir. 2021), Mr. Brown argued to the district court that that characterization could not survive the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021). In *Borden*, the Court construed the term "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), which contains an elements clause identical to § 4B1.2(a)(1). The Court held that, under the categorical approach, an offense does not involve the "use of physical force against the person of another" if the offense can be committed with a *mens rea* of recklessness. *Borden*, 141 S. Ct. at 1825 (plurality opinion); *id.* at 1834–35 (Thomas, J., concurring in the judgment).

The district court rejected Mr. Brown's argument. The court "readily conclude[d]" that Illinois vehicular hijacking is

---

another by the use of force or by threatening the imminent use of force." Criminal Code of 2012, P.A. 97-1108 (H.B. 2582), 2012 Ill. Laws 5685, 5696 (emphasis added). This change was part of comprehensive amendments aimed at reorganizing and clarifying the Criminal Code, and we are not aware of any evidence that the legislature intended any substantive change. *See* 97 Ill. Gen. Assem., Senate Proceedings, May 22, 2012, at 150–51 (statement of Senator Dillard) (describing the bill as effecting "a number of technical changes, including cross-references, reorganizing, definitions and definition Sections, and sentence restructuring"); *see also People v. Bradford*, 50 N.E.3d 1112, 1115 (Ill. 2016) (approving consideration of "the reason for the law, the problems to be remedied, the purposes to be achieved," and, in some circumstances, "legislative history, in order to discern the intent of the legislature").

a crime of violence and explained that, "if *Borden* somehow calls into question that finding," it would be a matter for us to address on appeal.[3] The court stated, however, that if it were mistaken in its calculation of the advisory sentencing range, it would have imposed a different sentence.

Mr. Brown appeals his sentence, arguing that the district court erred in finding that vehicular hijacking was a crime of violence and that he was, as a result, subject to the career-offender sentencing enhancement.

## II

We review de novo the district court's determination that Illinois vehicular hijacking is a crime of violence within the meaning of § 4B1.2(a)(1). *United States v. Maxwell*, 823 F.3d 1057, 1060 (7th Cir. 2016). The categorical approach controls our analysis. Under this approach, we do not look to the specific facts underlying Mr. Brown's conviction; rather, we examine only whether the Illinois criminal statute "has as an element the 'use, attempted use, or threatened use of physical force against the person of another,'" as required by § 4B1.2(a)(1). *Id.* at 1060–61; *see also Zaragoza v. Garland*, 52 F.4th 1006, 1013 (7th Cir. 2022) ("We compare [the federal] definition with the [state] offense as defined by statute and as applied by the [state] courts."). In other words, vehicular hijacking can serve as a predicate offense of the career-offender sentencing enhancement only if the statute of conviction "always requires the government to prove … the use, attempted use, or threatened use of force." *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). If the crime may be committed in a

---

[3] Sent. Tr. 17.

less culpable manner, there is a categorical mismatch, and the crime cannot be a predicate offense of the federal sentencing guideline.

Mr. Brown contends that the district court erred in determining that he was a career offender under the Sentencing Guidelines because there is a categorical mismatch between the elements clause of § 4B1.2(a) and the pre-2013 version of the Illinois vehicular hijacking statute. As he notes, the Supreme Court held in *Borden* that an offense does not involve the "use of physical force against the person of another" if the offense may be committed with a reckless mental state. 141 S. Ct. at 1825 (plurality opinion); *id.* at 1835 (Thomas, J., concurring in the judgment). The *Borden* plurality explained that the word "against," as used in the elements clause, "expresses a kind of directedness or targeting"; thus, a use of force *against* the person of another results from "purposeful and knowing acts" but not from "reckless conduct." *Id.* at 1826; *see also id.* at 1835 (Thomas, J., concurring in the judgment) ("[A] crime that can be committed through mere recklessness does not have as an element the 'use of physical force' because that phrase 'has a well-understood meaning applying only to intentional acts designed to cause harm.'").

In Mr. Brown's view, *Borden*'s construction of the elements clause precludes treating vehicular hijacking as a crime of violence. At the time of his conviction, he observes, the state statute did not include an express *mens rea* requirement. And, according to a separate, "catchall" provision of the Illinois Criminal Code, if a statute "does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability)," a mental state of intent, knowledge, or recklessness will apply. 720 ILCS 5/4-

3(b). Therefore, Mr. Brown submits, a straightforward reading of §§ 18-3 and 18-4 in conjunction with § 4-3(b) resolves this case: Vehicular hijacking can be committed with a reckless use of force, making it categorically overbroad with respect to § 4B1.2(a)(1).

We cannot accept this argument. The Illinois vehicular hijacking statute, even before it was amended to add an express *mens rea* of "knowingly," included as an implied element the knowing or purposeful use or threat of force—namely, the use or threat of force aimed at taking control or possession of a motor vehicle.

Under the pre-2013 version of § 18-3, "[a] person commits vehicular hijacking when he or she takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." At the outset, we must bear in mind the significance of the object of this offense: a motor vehicle. Unlike other forms of property which might, conceivably, be taken recklessly or even accidentally, it is difficult, if not impossible, to conceive of taking a motor vehicle from another person in any manner other than knowingly and purposefully. Operating or directing a motor vehicle involves conscious and deliberate action.

With that in mind, we further note that the language of the statute—which proscribes taking *by* the use or threat of force—strongly suggests that force or intimidation must be aimed or directed at the taking of the motor vehicle. *Cf. People v. Dennis*, 692 N.E.2d 325, 334 (Ill. 1998) (construing the similarly worded robbery statute and concluding that "the gist of the offense" is "the force or fear of violence *directed at the victim in order to* deprive him of his property" (emphasis added)); *People v. Lewis*, 651 N.E.2d 72, 88 (Ill. 1995) ("[T]he necessary

force or threat of force must be used *as a means of taking* the property from the victim." (emphasis added)). Employing force or intimidation in order to facilitate the taking of a vehicle is not the sort of reckless use of force that *Borden* found to be beyond the scope of the elements clause. *See* 141 S. Ct. at 1825 (plurality opinion) ("[T]he perpetrator [must] direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner."). Rather, inasmuch as taking and operating a motor vehicle is, by its nature, a conscious and deliberate action, using force or issuing threats as a means of accomplishing that goal is purposeful and knowing.[4]

The statutory history reinforces this conclusion. As the parties recognize, the language of the vehicular hijacking statute tracks closely the language of the robbery statute. But when the Illinois legislature created the offense in 1993, it was careful to identify it as an offense separate and distinct from robbery, simultaneously amending the robbery statute to apply to the taking of "property, except a motor vehicle covered by Section 18-3 or 18-4." 720 ILCS 5/18-1; *see* Vehicular Hijacking Act, P.A. 88-351 (S.B. 902), 1993 Ill. Legis. Serv. (West). The Supreme Court of Illinois has explained the purpose of this change: In contrast to the robbery statute, which was consistently interpreted in light of the "common-law understanding" of that offense, "[t]he vehicular hijacking offense is not derived from the common law but was newly enacted in

---

[4] We have no occasion to consider or comment on the appropriate analysis after *Borden* when the prior conviction is for robbery as defined by Illinois law. *See Klikno v. United States*, 928 F.3d 539, 547, 549 (7th Cir. 2019); *United States v. Love*, No. 22-2035, 2023 WL 2546507, at *2–3 (7th Cir. Mar. 17, 2023).

1993." *People v. Reese*, 102 N.E.3d 126, 138 (Ill. 2017). With this "entirely new offense," the legislature "intended to address criminal conduct distinct from robbery of a motor vehicle." *Id.* This conduct is in fact different in kind from robbery. Robbery presents the inherent risk that violence and injury will result from the forceful affront to personal and bodily integrity. But vehicular hijacking addresses a new and serious danger: Forceful conflict for control of a dangerous piece of equipment. Thus, *Reese* made clear that the taking of a motor vehicle did not simply entail dispossession of the vehicle but could also, perhaps more importantly, "include circumstances when the defendant takes a vehicle by exercising control," such as by "directing the driver through the use of force or the threat of force." *Id.*; *see also id.* at 139 ("The legislature also intended to criminalize taking control of a vehicle by force or threat of force, including when the victim remains inside the vehicle.").[5]

---

[5] The floor debates of the General Assembly show that legislators were specifically concerned with the confrontational and violent nature of vehicular hijacking. One of the bill's sponsors, Senator Hawkinson, explained that the statutory language "from the person or the immediate presence of another" would limit the statute's application to such situations as when the victim "was yanked out of the car or was right at the car." 88th Ill. Gen. Assem., Senate Proceedings, May 11, 1993, at 24–25 (statement of Senator Hawkinson). By contrast, if the victim had "left the car at the pump" and was inside "the gas station or the 7-11," a person who took the vehicle would commit "[t]heft of a motor vehicle," not hijacking. *Id.* at 25.

The legislature's decision to enact a vehicular hijacking statute in 1993 appears to reflect a national panic about carjackings in the wake of several high-profile crimes in the early 1990s. *See* Mary Ellen Beekman, *Auto Theft: Countering Violent Trends*, 62 FBI L. Enforcement Bull. 17, 17 (Oct. 1993) ( … continued)

The legislature's decision to create a unique offense for vehicular hijacking reveals a specific legislative purpose: to criminalize the deliberate act of taking a motor vehicle from another person, using force or intimidation to accomplish that goal. As *Reese* recognizes, the legislature intended to treat that conduct as a unique, and uniquely serious, criminal offense. Implicit in the conduct proscribed by the statute is a mental state of at least knowing or purposeful action.

Nonetheless, Mr. Brown invokes the catchall provision of the Illinois Criminal Code, § 4-3(b), as something of a trump card. Despite the implications of the statutory language, the nature of the act criminalized, and the logic of the legislature's intentions, he insists that § 4-3(b) mechanically modifies each provision of the Criminal Code to insert "recklessly, knowingly, or intentionally" wherever a mental state has not been

---

("Armed vehicle theft, led by its most infamous and widespread variety—carjacking—represents a violent escalation in an already-booming area of criminal activity. … [T]he random nature, acute sense of violation, and threat of violence inherent in carjacking provoke intense community fear of this crime."). Senator Hawkinson stated when introducing the bill: "We're all too familiar with the tragedies around the country of … car hijacking where someone armed or unarmed attacks a car, and … snatches the driver out." 88th Ill. Gen. Assem., Senate Proceedings, Apr. 15, 1993, at 281 (statement of Senator Hawkinson). He recalled a recent story where the victim was "dragged, because they're caught in the rush, and … caught by a seat belt or something and dragged and seriously injured or killed; sometimes these carjackings occur where a young child is a passenger in the car and is taken for a ride after a mother or father is … yanked from the car." *Id.* Senator Hawkinson was apparently referencing a particularly brutal Maryland case in which the victim, a thirty-four-year-old mother, was killed after getting tangled in the car seatbelt and dragged outside the car for over a mile. *See* Don Terry, *Carjacking: New Name for Old Crime*, N.Y. Times, Dec. 9, 1992, at A18.

expressly prescribed (and where it is concluded that the legislature did not intend to impose absolute liability).

As far as we can tell, the Illinois courts do not understand § 4-3(b) to operate in the manner Mr. Brown supposes. There is some support in the Illinois case law for his view that all three mental states covered by § 4-3(b) are implied in the absence of an express requirement. *See, e.g., People v. Anderson*, 591 N.E.2d 461, 465 (Ill. 1992) (holding that an offense could be committed with a mental state of recklessness, knowledge, or intent because the statute was silent as to *mens rea* but was not meant to create an absolute liability offense); *People v. Burmeister*, 497 N.E.2d 1212, 1215–16 (Ill. App. Ct. 1986) (same); *People v. Childs*, 948 N.E.2d 105, 112 (Ill. App. Ct. 2011) (similar). In other cases, however, the Supreme Court of Illinois has suggested that, "[w]here a statute neither prescribes a particular mental state nor creates an absolute liability offense," it is left to the court to "determin[e] *which* mental state element is implied" by the statutory language and the legislative intent. *People v. Sevilla*, 547 N.E.2d 117, 121–22 (Ill. 1989) (emphasis added) (inferring a mental state of knowledge in a statute with no express *mens rea*); *see also People v. Witherspoon*, 129 N.E.3d 1208, 1214–15 (Ill. 2019) (same); *People v. Gean*, 573 N.E.2d 818, 821–22 (Ill. 1991) (same); *People v. Whitlow*, 433 N.E.2d 629, 633–35 (Ill. 1982) ("[I]t is necessary to determine *which* of [§ 4-3(b)'s] mental states should apply to [the offense]." (emphasis added)). Thus, we are unable to read § 4-3(b) to mean that the mere absence of an express *mens rea* element inevitably leads to the conclusion that an offense may be committed recklessly. It is more likely that § 4-3(b) simply serves as a constitutional savings clause, narrowing the menu of potential implied mental states to ensure that a provision that is silent as to *mens rea* will not be read to criminalize

behavior involving the less culpable mental states of negligence, § 4-7, or ignorance or mistake, § 4-8. *Cf. In re K.C.*, 714 N.E.2d 491, 496 (Ill. 1999) (a statute is unconstitutional "if it potentially subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state"); *Elonis v. United States*, 575 U.S. 723, 734 (2015) ("[T]he general rule is that a guilty mind is a necessary element in the indictment and proof of every crime." (internal quotation marks omitted)).

In sum, the premise of Mr. Brown's § 4-3(b) argument is faulty; the catchall provision does not require that the mental state of recklessness be implied into the vehicular hijacking statute as a means of committing the offense. His appeal to § 4-3(b) therefore does not overcome our conclusion that Illinois vehicular hijacking is a knowing or purposeful offense.

### Conclusion

We conclude that a pre-2013 conviction of Illinois vehicular hijacking is a crime of violence under the elements clause of U.S.S.G. § 4B1.2(a). Accordingly, we affirm the judgment of the district court.

AFFIRMED